# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Erik McCoy,
     Petitioner,

vs.

Case No. 1:07cv474
(Barrett, J.; Hogan, M.J.)

Warden, Chillicothe Correctional
Institution,
     Respondent.

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition (Doc. 1), respondent's return of writ with exhibits (Doc. 9), and petitioner's reply to the return of writ (Doc. 10).

## Factual And Procedural Background

On December 29, 2004, the Hamilton County, Ohio, grand jury returned an eight-count indictment against petitioner and co-defendants Lamont Langford and Arnold Bush.  (Doc. 9, Ex. 1).  In the indictment, petitioner was charged with one count of conspiracy in violation of Ohio Rev. Code § 2923.01(A)(2) (Count 1), two counts of trafficking in marijuana in violation of Ohio Rev. Code § 2925.03(A) (Counts 2 and 4), and one count of possession of marijuana in violation of Ohio Rev. Code § 2925.11(A) (Count 3).  (*Id.*).

After a jury trial, petitioner was found guilty of possessing marijuana as charged in Count 3 of the indictment, in an amount "equal to or exceeding 20,000 grams;" petitioner was acquitted of all other charges.  (*See id.*, Exs. 2-3).  On September 8, 2005, petitioner was sentenced to an eight (8) year prison term.  (*Id.*, Ex.

4).

With the assistance of new counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District. In his appellate brief, he presented six assignments of error:

> 1. The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of possession of marijuana, as those findings were not supported by sufficient evidence.
>
> 2. The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of possession of marijuana, as those findings were [against the manifest weight of the evidence and thus] contrary to law.
>
> 3. The trial court erred to the prejudice of the Defendant-Appellant by overruling his Motion for Acquittal under Ohio Criminal Procedure Rule 29.
>
> 4. The trial court erred to the prejudice of Defendant-Appellant by allowing the prosecution to dismiss a black juror.
>
> 5. Defendant-Appellant was denied his rights of due process and of assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution because his trial counsel provided ineffective assistance.
>
> 6. The trial court erred to the prejudice of Defendant-Appellant by allowing certain testimony of Detective Crock regarding taped conversations and videotapes, despite repeated objections by counsel for Defendant-Appellant.

(*Id.*, Ex. 6).

On September 20, 2006, the Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.*, Ex. 8). In its decision, the state appellate court made the following factual findings, which are presumed correct under

2

28 U.S.C. § 2254(e)(1),[1] regarding the incident resulting in petitioner's conviction:

> The police set up a drug buy using an informant on December 22, 2004. The informant arranged the transaction so that the parties would meet at the Cracker Barrel restaurant on Winton Road and then go to the nearby Lee's Motel to complete the sale. The arrangements were made by telephone and recorded. At the meeting, the informant was wearing a transmitter. The police also used videotape surveillance. The drug sale was arranged with Arnold Bush, who arrived in a van driven by defendant-appellant Erik McCoy. They both went into the Cracker Barrel to meet the informant. When the informant asked Bush why another person was there, Bush said that he was his partner. McCoy then walked to the parking lot and waited in the van.
>
> Bush and the informant went to Lee's Motel and negotiated the sale of 20,000 grams of marijuana. These negotiations were recorded on videotape. As soon as the deal was completed, Bush called McCoy and told him that someone was coming out and that he should help that person load the marijuana from the trunk of a car into the van. Bush was then immediately arrested in the motel room.
>
> McCoy drove the van behind the car that had the marijuana in the trunk. An undercover officer went out to the car. McCoy looked in the trunk, smelled the marijuana, and lifted out a large bag. When the police approached him, he attempted to run, but was apprehended. All of this was recorded on videotape. . . .

(*Id.,* pp. 1-2).

Petitioner's counsel filed a timely appeal from this decision to the Ohio Supreme Court. (*See id.,* Exs. 9-10). On January 24, 2007, the state supreme court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 12).

---

[1]Specifically, 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, he has not shown that such findings are erroneous.

Petitioner filed the instant federal habeas corpus petition in June 2007. (*See* Doc. 1). The petition sets forth six grounds for relief:

**Ground One:** [T]he State er[r]ed to prejudice by finding [petitioner] guilty of possession of marijuana, as those findings were not supported by sufficient evidence and further the [S]tate failed to support that petitioner had possession of 20,000 or more grams of marijuana.

**Ground Two:** The jury and the trial court erred to the prejudice of the petitioner by finding him guilty of possession of marijuana, as those findings were contrary to law, and were against the manifest weight of the evidence.

**Ground Three:** [T]he [S]tate failed to meet its burden, and erred to prejudice of the petitioner by overruling his motion for acquittal under criminal procedure Rule 29. . . .

**Ground Four:** [T]he trial court er[r]ed to the prejudice of petitioner by allowing certain testimony of detective Crock regarding taped conversations and vi[de]otapes, d[e]spite repeated objections by counsel for petitioner.

**Ground Five:** Petitioner was denied his rights of due process and of assistance of counsel as [g]uaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 and 16, of the Ohio Constitution because his trial counsel provided ineffective assistance.

**Ground Six:** The trial court erred to the prejudice of Appellant by allowing the prosecution to dismiss a black juror because of her race....

(*Id.*, attachment, pp. 1, 4, 6, 8, 9, 14).

Respondent does not argue, nor does it appear, that the petition is barred from review on statute of limitations grounds. In the return of writ, respondent contends that petitioner's claims alleged in Grounds One and Three challenging the sufficiency of evidence lack merit, and that the state-law manifest-weight-of-the-evidence claim alleged in Ground Two and evidentiary claim alleged in Ground Four are not cognizable in this federal habeas proceeding. (*See* Doc. 9, Brief, pp. 5-14).

4

Respondent further argues that the ineffective assistance of trial counsel claims alleged in Ground Five are either waived or lack merit. (*Id.,* pp. 14-19). Finally, respondent contends that petitioner is not entitled to habeas relief based on the merits of his claim alleged in Ground Six challenging the removal of an African-American from the jury under *Batson v. Kentucky,* 476 U.S. 79 (1986). (*Id.,* pp. 19-23).

In his brief in reply to the return of writ, petitioner states that he agrees with respondent's argument that he "did not suffer any prejudice by the prosecutor's challenge of a black jur[or]," and therefore "completely wa[iv]e[s] th[e] assignment of error" alleged in Ground Six of the petition. (Doc. 10, p. 5). In addition, petitioner "waives all claims associated with defense counsel [which are alleged in Ground Five of the petition] except one[:] counsel was deficient for stipulating to a[n] unproven amount of drugs in which petitioner was alleged to have possession of." (*Id.*).

Because it thus appears that petitioner has withdrawn his sixth ground for relief, as well as all but one of the ineffective assistance of trial counsel claims alleged in Ground Five of the petition, the undersigned will not consider such claims in adjudicating this matter. Instead, the Court will proceed to address petitioner's remaining claims for relief alleged in Grounds One through Five in light of the defenses asserted by respondent in the return of writ.

## OPINION

### A. Petitioner Is Not Entitled To Relief Based On His Claims Alleged In Grounds One Through Three Of The Petition Challenging The Weight And Sufficiency Of Evidence Supporting His Drug Possession Conviction

In Grounds One through Three of the petition, petitioner essentially contends that he is entitled to habeas corpus relief because the evidence was insufficient to establish beyond a reasonable doubt that he possessed marijuana in an amount equal to or exceeding 20,000 grams (Grounds One and Three) and because the jury's verdict of guilt on the possession charge was against the manifest weight of the evidence (Ground Two). (Doc. 1, attachment, pp. 1-7).

As an initial matter, as respondent has argued in the return of writ, the claim alleged in Ground Two challenging petitioner's conviction on the ground that it is against the manifest weight of the evidence is not cognizable in this federal habeas proceeding. A federal court may review a state prisoner's habeas petition only on the

5

ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.), *cert. denied,* 540 U.S. 930 (2003).

Petitioner's manifest-weight-of-the-evidence claim raises an issue of state-law only. *See Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997), *superseded by state constitutional amendment on other grounds, State v. Smith,* 684 N.E.2d 668 (Ohio 1997), *cert. denied,* 523 U.S. 1125 (1998). Therefore, only petitioner's sufficiency of evidence claim alleged in Grounds One and Three of the petition triggers a due process issue subject to review on the merits herein.

In this case, the Ohio Court of Appeals was the only state court to address the merits of the federal due process claim challenging the sufficiency of evidence. Citing only state case-law, the court overruled petitioner's claims of error as alleged in Grounds One and Three of the petition; in so ruling, the court made factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[2] and reasoned in relevant part as follows:

> To determine if the evidence was insufficient, this court must view the evidence in the light most favorable to the state, and determine if a rational trier of fact could have found all the essential elements of the offense charged. . . .

> McCoy asserts there was insufficient evidence that he had knowledge of what was in the bag he removed from the trunk of the car, and that even if he did have knowledge, there was no evidence of how much marijuana was in the bag or that he possessed 20,000 grams. The statute McCoy was found guilty of violating states, "No person shall knowingly obtain, possess, or use a controlled substance." McCoy drove to the place of the sale with his partner Bush and went into the Cracker Barrel with him. Bush told the informant that McCoy knew what was going on and was

---

[2] *See supra* p. 3 n.1.

6

his partner. McCoy was told to unload the trunk of the car; he leaned in and smelled the marijuana before he pulled one bag out. When he became aware of the police presence, he ran. Thus, a rational trier of fact could certainly have found that McCoy was a part of this sale.

Moreover, there was evidence that the total amount of marijuana in the trunk was well in excess of 20,000 grams. The jury could have reasonably found that when McCoy went to the trunk and began to unload it, he took constructive possession of all the marijuana in the trunk. Thus, this evidence, when viewed in the light most favorable to the state, was sufficient to convict McCoy of possessing at least 20,000 grams of marijuana. Consequently, the trial court did not err in overruling his Crim.R. 29 motion. . . .

(Doc. 9, Ex. 8, pp. 2-3) (footnote to state case citation omitted).

In the usual case, a federal habeas petitioner is not entitled to relief unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

7

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, although the Ohio Court of Appeals did not cite Supreme Court precedent in addressing petitioner's sufficiency of evidence claim, the court correctly identified the standard of review which was established by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 (1979), as governing the resolution of this issue. The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). Therefore, as the Ohio Court of Appeals recognized (*see* Doc. 9, Ex. 8, p. 2), when a prisoner raises a sufficiency of evidence claim in a petition for writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983). It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence

or otherwise substitute its opinion for that of the trier of fact which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

Petitioner was convicted in this case of possessing marijuana in an amount equal to or exceeding 20,000 grams in violation of Ohio Rev. Code § 2925.11(A). Ohio Rev. Code § 2925.11(A) provides: "No person shall knowingly obtain, possess or use a controlled substance." Therefore, the State was required to prove that petitioner knowingly possessed a minimum of 20,000 grams of marijuana.

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Ohio Rev. Code § 2901.22(B). Ohio Rev. Code § 2925.01(K) defines "possession" as follows:

> "Possess" or "possession" means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.

Possession may be actual or constructive. *State v. Tell,* No. 84790, 2005 WL 628239, at *3 (Ohio Ct. App. 8th Dist. Mar. 17, 2005) (unpublished) (citing *State v. Wolery,* 348 N.E.2d 351, 360 (Ohio), *cert. denied,* 429 U.S. 932 (1976)); *see also State v. Bettis,* No. C-060202, 2007 WL 1095682 (Ohio Ct. App. 1st Dist. Apr. 13, 2007) (unpublished) (citing *State v. Hankerson,* 434 N.E.2d 1362, 1363 (Ohio), *cert. denied,* 459 U.S. 870 (1982), and *State v. Haynes,* 267 N.E.2d 787 (Ohio 1971)). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Wolery,* 348 N.E.2d at 360; *see also Hankerson,* 434 N.E.2d at 1363.

The State need not prove the defendant's ownership of the substance to establish constructive possession. *Tell, supra,* 2005 WL 628239, at *3 (citing *State v. Mann,* 638 N.E.2d 585, 589 (Ohio Ct. App. 8th Dist. 1993), *appeal dismissed,* 637 N.E.2d 9 (Ohio 1994)). Although mere presence in the vicinity of a controlled substance is insufficient to prove the element of possession, *State v. Claytor,* 620 N.E.2d 906, 911 (Ohio Ct. App. 4th Dist.) (and cases cited therein), *appeal dismissed,* 616 N.E.2d 506 (Ohio 1993), "[r]eadily usable drugs or other contraband in close proximity to a defendant may constitute sufficient and direct circumstantial evidence

to support a finding of constructive possession." *Tell, supra,* 2005 WL 628239, at *3; *see also State v. Scalf,* 710 N.E.2d 1206, 1210 (Ohio Ct. App. 8th Dist.), *appeal dismissed,* 694 N.E.2d 981 (Ohio 1998); *State v. Pruitt,* 480 N.E.2d 499, 508 (Ohio Ct. App. 8th Dist. 1984).

By the same token, "the mere fact that [a controlled substance] is located within premises under one's control does not, of itself, constitute constructive possession." *Hankerson,* 434 N.E.2d at 1365. "It must also be shown that the person was conscious of the presence of the [substance]." *Id.*; *see also In re Jones,* No. C-060873, 2007 WL 3306748, at *1 (Ohio Ct. App. 1st Dist. Nov. 9, 2007) (unpublished), *appeal dismissed,* 884 N.E.2d 1109 (Ohio 2008).

Here, the State presented sufficient evidence to establish beyond a reasonable doubt that petitioner had knowledge of and constructively possessed the marijuana in the trunk of the informant's car, which petitioner was in the process of transferring to the van he and Bush had been driving when he was arrested.

First, as the Ohio Court of Appeals determined, a rational trier of fact could have found that petitioner was a knowing participant in the drug sale negotiated by Bush with the informant on December 22, 2004 at Cracker Barrel and Lee's Motel. As the audiotape of Bush's conversation with the informant at Cracker Barrel revealed, Bush told the informant that petitioner was his "partner" and "knows what is going on here, he's with me, and everything is cool." (Doc. 9, Ex. 16, Tr. 351, 356). Moreover, when the deal was finalized in the motel room with Bush's agreement to pay approximately $43,000 for the marijuana, Bush phoned petitioner, who was waiting outside in the van, and told petitioner to help transfer the marijuana from the trunk of the informant's car to the van. (*Id.,* Tr. 380-83).

At that point, an undercover agent, who was present in the motel room with Bush and the informant, left the room and went down to the parking lot to meet petitioner. (*Id.,* Tr. 481). The agent testified:

> I told him to go to the other parking lot where I had products, and he told me to get in the van. I told him, no, I would meet him over there. ...[H]e drove over there. I opened the trunk and he then leaned in and smelled it, and then he told me to open the back door of his van to help him unload.

\*\*\*\*

10

> He smelled it, leaned in, then he picked up the bag out of the trunk[;] it was a large bag, and attempted to walk towards the van before he was apprehended.

(*Id.,* Tr. 481-82). The agent testified that as soon as petitioner lifted the bag out of the trunk, other agents appeared to arrest petitioner; after a "brief attempt to run," petitioner "submitted to law enforcement and placed himself on the ground." (*Id.,* Tr. 492-93).

A rational juror could infer from all these circumstances that petitioner not only was involved with Bush in the drug transaction, but was also well aware and thus conscious of the fact that he was transferring a large quantity of marijuana from the trunk of the informant's car to his van.

Furthermore, the evidence presented at trial was sufficient to support the jury's finding that petitioner possessed marijuana in an amount "equal to or exceeding 20,000 grams." Specifically, the proposed sale involved more than 20,000 grams of marijuana. (*See id.,* Tr. 291-92). The Regional Narcotics Unit (RENU) supplied approximately 200 pounds of marijuana for the transaction in three large U-Haul boxes marked State's Exhibits 8-A, B, C, which were loaded into the trunk of the informant's car in three or four bags. (*Id.,* Tr. 364, 491). A chemist examined "roughly 23,000 grams," or around 50 pounds,[3] of the marijuana and prepared a report which was marked as State's Exhibit 10. (*Id.,* Tr. 365). The parties entered the following stipulation:

> . . .[T]he bails of marijuana, which are 8-A, B and C, were examined by the chemist from the lab, and the stipulation is that if he were to come in and testify, he would testify consistently with his lab report that he prepared, which is Exhibit 10. And this lab report reflects that he examined Exhibits 8-A, B and C, and turned out that it was, in fact, marijuana, over 20,000 grams, according to the report, which is Exhibit 10.

(*Id.,* Tr. 369-70).

---

[3]Upon utilization of a conversion procedure available on the internet, it appears that one pound equals 453.59 grams, and 20,000 grams is a little over 44 pounds. (*See also* Doc. 9, Ex. 16, Tr. 291).

The undercover agent, who was present when petitioner took one of the bags out of the trunk of the informant's car to transfer to his van, testified that the bag taken by petitioner weighed approximately 80 to 100 pounds. (*Id.,* Tr. 486). Solely on the basis of that testimony, a rational juror could infer that petitioner possessed over 20,000 grams of marijuana. However, even assuming as petitioner argues that the evidence was insufficient to establish the weight of the bag taken by petitioner, a rational juror could infer that, as the Ohio Court of Appeals reasonably determined, when petitioner "went to the trunk and began to unload it, he took constructive possession of all the marijuana in the trunk," which was "well in excess of 20,000 grams." (*See id.,* Ex. 8, p. 3).

Accordingly, in sum, the manifest-weight-of-the-evidence claim alleged in Ground Two of the petition raises a state-law issue only, which may not be considered on federal habeas review. With respect to the sufficiency of evidence claim alleged in Grounds One and Three, the Court concludes that, when viewing the evidence in the light most favorable to the prosecution, a rational juror could have found beyond a reasonable doubt that petitioner knowingly possessed marijuana in an amount equal to or exceeding 20,000 grams.

For these reasons, the undersigned further concludes that the state courts' adjudication of petitioner's sufficiency of evidence claim neither is contrary to nor involves an unreasonable application of the *Jackson* standard, and is not based on an unreasonable determination of facts in light of the evidence presented at trial. Petitioner, therefore, is not entitled to habeas corpus relief based on the claims alleged in Grounds One through Three of the petition challenging the weight and sufficiency of evidence supporting his drug possession conviction.

## B. Petitioner Is Not Entitled To Habeas Relief Based On The Claim Alleged In Ground Four Of A State Evidentiary Error

In Ground Four of the petition, petitioner claims that the trial court erred to his prejudice when it allowed Hamilton County RENU agent Bill Crock to testify "regarding taped conversations and vi[de]otapes, d[e]spite repeated objections by counsel for petitioner" that such testimony violated the "best evidence" rule set forth in Ohio R. Evid. 1001. (Doc. 1, p. 8).

As an initial matter, it appears that petitioner argued this issue only in terms of state law on direct appeal (*see* Doc. 9, Ex. 6, p. 8; Ex. 9, p. 7), and therefore has waived any claim of federal constitutional error absent a showing of cause and

prejudice or that a fundamental miscarriage of justice will occur if the claim is not considered herein. *See, e.g., McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987) (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)) (petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law); *see also Prather v. Rees,* 822 F.2d 1418 (6th Cir. 1987).

Even assuming, *arguendo,* that petitioner presented a federal due process claim to the state courts which may be considered by this Court, the trial court's ruling on the admission or exclusion of evidence under state law generally may not be questioned unless the ruling rendered the trial so fundamentally unfair as to amount to a denial of due process. *See, e.g., Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988); *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.), *cert. denied,* 464 U.S. 951 (1983); *Logan v. Marshall,* 680 F.2d 1121, 1123 (6th Cir. 1982)*; Bell v. Arn*, 536 F.2d 123, 125 (6th Cir. 1976). In a case such as this, involving a claim of ordinary trial error where no specific constitutional guarantee is implicated, the alleged error does not amount to a fair trial violation unless when viewed in the context of the entire record it is found to have "tilted the scales in favor of a guilty verdict" or was "so egregious as to have nullified the legitimacy of the properly admitted substantive evidence of guilt." *Lundy v. Campbell*, 888 F.2d 467, 473 (6th Cir. 1989), *cert. denied,* 495 U.S. 950 (1990); *Webster v. Rees,* 729 F.2d 1078, 1081 (6th Cir. 1984); *see also Walker,* 703 F.2d at 968.

Here, upon review of Crock's trial testimony, it appears that petitioner's trial counsel objected to the use of transcripts of the taped conversations and raised one other objection based on Ohio's "best evidence" rule. Specifically, counsel first objected to the use of the transcripts "unless the tape is unintelligible and [a transcript] somehow assists the trier of fact. (Doc. 9, Ex. 16, Tr. 298). The court overruled the objection, but stated on the record before the jury:

> Well, here is how I handle that. The best evidence for the actual phone calls is the phone calls that were the original records, that's going to be introduced into evidence. The transcript merely helps you understand it. If there is any discrepancy, the actual recording is what really was said. In other words, if there is a mistake from reading through there, if you see that there might be a typographical error o[f] the person that typed up the transcript, that's not a problem, because the tape of the conversation is the evidence of what happened. This is the evidence of what happened is what you hear. In other words, the transcript is just to kind of help

you follow along.

(*Id.,* Tr. 298-99).

At a later point in Crock's examination by the prosecutor, Crock was asked about the "brief conversation" that had occurred in the motel room between Bush, the informant and undercover agent "about how much money was there, are we going to count it[,] how are they wrapped." (*Id.,* Tr. 380). Defense counsel objected to this question as follows: "To play the tape would be the best evidence. It would be the tape, not a summary of what is going to be on the tape." (*Id.,* Tr. 381). The objection was summarily overruled on the ground that Crock's testimony "could help the jury." (*Id.*). Eventually the videotape of the motel room encounter, which also contained a transcribed audio component, was played to the jury. (*See id.,* 386-88).

The Ohio Court of Appeals, which was the last state court to issue a reasoned decision rejecting petitioner's claim that Crock's testimony violated Ohio's "best evidence" rule, held:

> The best evidence rule concerns the authenticity of documents. It is not applicable here, as a witness is allowed to testify as to those things he or she has seen and heard, as long as what was heard is not inadmissible hearsay.

(*Id.,* Ex. 8, pp. 4-5) (footnote citation to Ohio R. Evid. 1001 omitted).

The state appellate court's ruling on the state-law issue is entitled to deference. *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237 (1940) (and cases cited therein) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."); *see also Hampton v. United States,* 191 F.3d 695, 701 (6th Cir. 1999) (citing *Hicks v. Feiock,* 485 U.S. 624, 630 n. 3 (1988) (applying *West* standard in federal habeas case)); *cf. Lawler v. Fireman's Fund Ins. Co.,* 322 F.3d 900, 903 (6th Cir. 2003).

In any event, even assuming error occurred under state-law, petitioner has not demonstrated that such error deprived petitioner of a fair trial. Petitioner has not pointed out any inconsistencies in Crock's testimony or the transcripts used during Crock's examination, which arguably could have prejudiced the defense. Moreover,

importantly, the trial court informed the jury that the "best evidence" was the actual recordings of the conversations played in the courtroom, which superseded any discrepancies contained in the transcripts referred to during Crock's examination at trial.

Accordingly, petitioner is not entitled to habeas relief based on his claim of error under Ohio R. Evid. 1001, which is alleged in Ground Four of the petition.

## C. Petitioner Has Waived The Non-Withdrawn Ineffective Assistance Of Trial Counsel Claim Alleged In Ground Five Of The Petition

In Ground Five of the petition, petitioner asserted various claims challenging his trial counsel's performance under the Sixth Amendment. (Doc. 1, pp. 9-13). In his reply to the return of writ, however, petitioner withdrew all but the following claim of error by trial counsel: "counsel was deficient for stipulating to an unproven amount of drugs in which the petitioner was alleged to have possession of." (Doc. 10, p. 5). As respondent has argued in the return of writ, it appears that petitioner has waived this claim of error because he did not present it to the state courts as an example of trial counsel's ineffectiveness. (*See* Doc. 9, Brief, p. 16; Ex. 6, p. 7; Ex. 9, pp. 6-7).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present a claim through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of such claim by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue the claim in the state courts, his claim for habeas corpus relief is subject to dismissal with prejudice on the ground that it is waived. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,*

763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had a claim considered by the state's highest court and he can no longer present the claim to the state courts, he has waived such claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed a procedural default with respect to the claim of ineffectiveness that he would like this Court to review, because he never raised it to the state courts for their consideration. Therefore, such claim is barred from review absent a showing of cause and prejudice for the default or that a fundamental miscarriage of justice will occur if the claim is not considered herein. No such showing has been made in this case.

Accordingly, in sum, petitioner is not entitled to habeas relief based on the one ineffective assistance of trial counsel claim alleged in Ground Five of the petition that remains after the filing of petitioner's reply to the return of writ, because such claim is deemed waived.[4]

---

[4]It is noted that to the extent petitioner may seek to reinstate the ineffective assistance of trial counsel claims that were raised to and considered by the state courts on direct appeal, he still would not be entitled to habeas relief. The Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing such claims, rejected petitioner's arguments that counsel erred in admitting petitioner's prior record in opening statement and in conceding that petitioner "had known that there might have been marijuana in the trunk." (Doc. 9, Ex. 8, p. 4). The Ohio court correctly identified the two-prong standard enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984), requiring a showing of both deficient performance and that the error prejudiced the defense. (*See id.*). The court reasonably determined that counsel was not ineffective under the second prong of the *Strickland* test in referring to petitioner's prior criminal record during opening statement because petitioner testified at trial and, therefore, the State was allowed to bring out the past record on cross-examination. (*See id.*). The court further reasonably determined that counsel was not ineffective in conceding that petitioner knew there might be marijuana in the trunk because petitioner "would have been hard-pressed to deny any [such] knowledge" and, in any event, the concession "seems to have been a wise choice, as [petitioner] was only convicted of possession and not of any of the other serious crimes with which he was charged." (*Id.*).

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the non-withdrawn claim alleged in Ground Five of the petition, which this Court has concluded is waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[5] A certificate of appealability also should not issue with respect to the state-law claims alleged in Grounds Two and Four of the petition, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on such claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Finally, a certificate of appealability should not issue with respect to the sufficiency of evidence of claims alleged in Grounds One and Three of the petition, because petitioner has not made a substantial showing that he has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 5/28/08

cbc

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2008 habeas orders\07-474denypet.waiv.sufficevid-drugposs.iac.batson.eviderr.wpd

---

[5]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in the non-withdrawn ground for relief. *See Slack,* 529 U.S. at 484.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Erik McCoy,
    Petitioner

vs                                    Case No. 1:07cv474
                                      (Barrett, J.; Hogan, M.J.)

Warden, Chillicothe Correctional
Institution,
    Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable
Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas
corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action
under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States
District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's
Report and Recommendation within ten (10) days after being served with a copy
thereof. Such party shall file with the Clerk of Court and serve on all other parties
written objections to the Report and Recommendation, specifically identifying the
portion(s) of the proposed findings, recommendations, or report objected to, together
with a memorandum of law setting forth the basis for such objection(s). Any response
by an opposing party to the written objections shall be filed within ten (10) days after
the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A
party's failure to make objections in accordance with the procedure outlined above
may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140
(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent ☐ Addressee<br>B. Received by ( *Printed Name*)   C. Date of Delivery |
| 1. Article Addressed to:<br><br>Eric McCoy 505-450<br>Chillicothe Corr. Inst.<br>PO Box 5500<br>Chillicothe, OH 45601 | D. Is delivery address different from item 1? ☐ Yes<br> If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*) ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*) | 7007 1490 0001 0562 6813 |

PS Form 3811, August 2001   Domestic Return Receipt   102595-01-M-2509

1:07cv474 Doc.11